UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (CLEVELAND)

| | |
|---|---|
| **VIRGINIA BARNES**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**THE PROGRESSIVE CORPORATION; PROGRESSIVE NORTHERN INSURANCE COMPANY; DRIVE INSURANCE HOLDINGS, INC; and DOES 1-10.**<br><br>Defendants. | Case No. |

## COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, Virginia Barnes ("Plaintiff"), by and through the undersigned attorneys, brings this Complaint against Defendants, Progressive Northern Insurance Company ("Defendant Progressive Northern"), Drive Insurance Holdings, Inc. ("Defendant Drive Insurance"), The Progressive Corporation ("Defendant Progressive Corp.") and Does 1-10 ("Does Defendants" all collectively, "Defendants") individually and on behalf of all similarly situated individuals and states as follows:

### INTRODUCTION

1.  This is a collective action brought by Plaintiff on her own behalf and on behalf of all similarly situated current and/or former employees of Defendants to recover for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards ("Ohio Wage Act"), O.R.C. ch. 4111, the Ohio Prompt Pay Act,

O.R.C. § 4113.15 ("OPPA"), and 41 O.R.C. § 4141.18 (the Ohio Wage Act, the OPPA, and 41 O.R.C. § 4141.18 will be collectively referred to as the "Ohio Acts").

2. Defendant Progressive Northern is a wholly-owned subsidiary of Defendant Drive Insurance. Defendant Drive Insurance is a wholly-owned subsidiary of Defendant Progressive Corp., a publicly owned corporation.

3. Defendants are "one of the largest auto insurance groups in the United States, thanks to innovations including comparison rates and 24/7 customer and claims service."[1] Defendants employ individuals as "*the voice of Progressive*" working within one of Defendants' "six major call center locations across the country."[2] One of the six major call centers being located in their headquarters in Mayfield Village, Ohio. *See Customer Services Representative – Inbound Call Center* Job Posting Example, attached hereto as Exhibit 1 (stating the employee would work in Mayfield Village, Ohio).

4. Defendants employed Plaintiff and other similarly situated current and/or former Customer Service Representatives or other job titles performing similar job duties to work full-time, scheduling Plaintiff and other similarly situated for at least forty (40) hours per week. However, Plaintiff and those similarly situated were subject to Defendants' policy and practice of employing them to work pre-shift and post-shift off-the-clock time without compensation. This policy resulted in Plaintiff and other similarly situated former and/or current employees not being paid for all time worked and for all of their overtime in violation of the FLSA.

5. Defendants knew or could have easily determined its employees performed pre-shift and post-shift work, and Defendants could have properly compensated Plaintiff and other

---

[1] https://www.progressive.com/progressive-insurance/history/ (last visited April 17, 2017).
[2] https://www.progressive.com/jobs/customer-service-rep/ (last visited April 17, 2017).

similarly situated former and/or current employees this work, but did not.

6. The U.S. Department of Labor specifically condemns an employer's non-payment of an employee's necessary preliminary and postliminary activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *See* DOL Fact Sheet #64, at 2, attached hereto as Exhibit 2. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*. at 2.

7. Plaintiff brings this action on behalf of herself, and all other similarly situated hourly employees of Defendants, to recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. §§ 201, *et seq*.

9. This Court also has subject-matter jurisdiction over Plaintiff's Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

10. Upon information and belief, Defendants' annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.[3] Defendants'

---

[3] According to Defendants website, "growth continues at a steady pace, too: Between 1996 and 2005, Progressive grew an average of 17 percent per year, from $3.4 billion to $14 billion." https://www.progressive.com/progressive-insurance/history/ (last visited April 17, 2017).

employees engage in interstate commerce, and therefore, they are also covered by the FLSA on an individual basis.

11. This Court has supplemental jurisdiction over the Ohio state law wage and hour class pursuant to 28 U.S.C. § 1367 because all Ohio state law wage and hour claims are so related to the federal claims that "they form part of the same case or controversy" such that they should be adjudicated in one judicial proceeding.

12. This Court has personal jurisdiction over Defendants because they do business within the State of Ohio and Defendant Progressive Corporation is headquartered in "Cleveland suburb of Mayfield Village."[4]

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## **PARTIES**

14. Plaintiff is an individual who resides in the County of Cuyahoga, City of East Cleveland, Ohio. Plaintiff was employed by Defendants as an hourly employee who worked for Defendants in their call center located in Mayfield Village, Ohio from approximately November 2011 through approximately February 2015 as a Customer Service Representative ("CSR").[5] Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and her Consent to Sue is attached hereto as Exhibit 3.

15. Plaintiff and the other similarly situated individuals were, or are, employed by

---

[4] *Id.* (stating Progressive moved its headquarters to Mayfield Village in 1974).
[5] Plaintiff continued working for Defendants' as a Customer Service Representative from approximately February 2015 through approximately January 2016, no longer working from the Mayfield Village, Ohio location, but as an At-Home Customer Service Representative. Plaintiff's time of employment with Defendants working from home is not applicable in the instant action.

4

Defendant as Customer Service Representatives or other job titles performing similar job duties. *See e.g.* Exhibit 1 (noting that on Defendants' "Customer Service Representative – Inbound Call Center" job posting, Defendants chose to list other job opportunity titles within that posting: "Inbound Sales Reps," "Customer Services Reps," and "Claims Reps.")

16. Defendant Progressive Northern, upon information and belief, at all times relevant, is a foreign insurer and a foreign company, doing significant business in the State of Ohio. Defendant Progressive Northern is a wholly-owned subsidiary of Defendant Drive Insurance. Defendant Drive Insurance is a wholly-owned subsidiary of Defendant Progressive Corp., a publicly owned corporation. Upon information and belief, Defendant Northern can be served at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143.

17. Defendant Drive Insurance is registered to do business within the State of Ohio and is registered with the Ohio Secretary of State. Defendant Drive Insurance can be served through its Registered Agent, C T CORP, located at 1300 E. 9th Street, Cleveland, Ohio, 44114.

18. Defendant Progressive Corp. is registered to do business within the State of Ohio and is registered with the Ohio Secretary of State. Defendant Progressive Corp. can be served through its Registered Agent, C T CORP, located at 1300 E. 9th Street, Cleveland, Ohio, 44114.

19. At all relevant times, Defendant Progressive Northern, Defendant Drive Insurance, and Defendant Progressive Corp. were joint "employers" of Plaintiff within the meanings of 29 U.S.C. § 203(d) and O.R.C. § 4111.03(D)(2), and Plaintiff was Defendants' "employee" within the meanings of 29 U.S.C. § 203(e) and O.R.C. § 4111.03(D)(3).

20. At all relevant times, Defendant Progressive Northern, Defendant Drive Insurance, and Defendant Progressive Corp. were members of, and engaged in, a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuance of said

joint venture, partnership or common enterprise in employing Plaintiff and other similarly situated current and/or former employees.

21. Plaintiff does not know the true names and capacities, whether individual, partner, or corporate, of the Defendants sued herein, and for that reason, Defendants are sued under such fictitious names DOES 1-10. Plaintiff will seek leave from this Court to amend this Complaint when the true names and capacities of the Defendants are discovered.

22. Plaintiff is informed and believes, and allege thereon, that at all relevant times, each of the Defendants, including DOES Defendants, whether individual, partner, corporate, was and is responsible in some manner for the circumstances alleged herein, and proximately cause Plaintiff's and the similarly situated class, to be subject to the unlawful acts and practices complained of herein.

23. At all times relevant, Defendants, including DOES Defendants, were members of, and engaged in, a joint venture, partnership, and common enterprise, and were acting within the course and scope of, an in pursuance of said joint venture, partnership or common enterprise.

## **GENERAL ALLEGATIONS**

24. Plaintiff was employed by Defendants as an hourly CSR who worked for Defendants in their call center located in Mayfield Village, Ohio from approximately November 2011 through approximately February 2015. Plaintiff's hourly wage was $15.95.

25. Plaintiff's primary job duties as a CSR included, but was not limited to, helping Progressive callers over the phone by answering questions about Progressive insurance policies, assisting customers who needed to change or cancel their Progressive policies, and assisting customers in making payments to their Progressive policies.

26. Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked

6

forty (40) hours per week and occasionally in excess of forty (40) per week.

27. Whether Plaintiff's scheduled and recognized hours were forty (40), or the occasional week when Plaintiff's scheduled and recognized hours were in excess of forty (40), Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of her job as a CSR. The off-the-clock tasks varied, and Plaintiff was never compensated for this time.

28. 29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

29. 29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

### A. *Pre-Shift Work*

30. Plaintiff was tasked with providing Defendants' various callers with customer service by use of Defendants' computers and the programs accessible from Defendants' computers.

31. Defendants required all call center employees to allot time to come into the office before their scheduled shifts in order to boot up their computers, launch and log into all necessary programs, and clock-in by calling in a code at the technical start time of their scheduled shifts. This pre-shift procedure would take approximately ten (10) minutes per day.

32. In order for Plaintiff to perform her job, the pre-shift procedure of booting up Defendants' computer, launching and logging into all of Defendants' necessary programs, and clocking-in by calling in a code at the technical start time of Plaintiff's scheduled shift was integral

7

and indispensable to Defendants' business and integral and indispensable to the performance of CSRs' principal job duties.

33. At all times relevant to this Complaint, Defendants suffered or permitted Plaintiff and other similarly situated former and/or current employees to routinely perform off-the-clock pre-shift work by not recognizing its employees as "clocked-in" until *after* the pre-shift boot-up and log-in procedure was complete. Defendants refused to recognize pre-shift time as compensable and began calculating Plaintiff and other similarly situated former and/or current employees upon them calling in in a code. Plaintiff and other similarly situated former and/or current employees were not allowed to call in this code until after all pre-shift boot-up and log-in procedures were complete, at the technical start time of their scheduled shifts.

34. Defendants willfully engaged in the policy and practice of calculating Plaintiff and other similarly situated former and/or current employees' compensable hours beginning at the technical start time of their scheduled shifts despite having record of its employees *actual* start times via Defendants' internal door security system that required employees to swipe his or her badge to be allowed access into the inner building where he or she worked.

35. Defendants knew or should have known that its employees are required to be paid for all compensable time throughout the workweek. Further, Defendants knew or should have known that its employees do, in fact, perform compensable pre-shift work as 29 C.F.R. § 553.221 and C.F.R. § 790.8 provides.

36. Despite this, Defendants failed to compensate their employees for pre-shift compensable time in any amount.

37. Defendants knew or should have known that, under the FLSA, Plaintiff should have been paid overtime "at a rate not less than one and one-half times the regular rate" at which she

8

was employed for all compensable pre-shift time for workweeks in excess of forty (40) hours. 29 U.S.C. § 207(a)(1).

38. Defendants knew or should have known that under the Ohio Wage Act, Plaintiff should have been paid overtime "at a wage rate of one and one-half times" of the employee's regular wage rate for those hours in excess of 40 hours per week." Ohio Rev. Code § 4111.03(A).

39. Despite this, Defendants failed pay overtime at one and one-half times the regular rate for Plaintiff's pre-shift compensable time.

40. In reckless disregard of the FLSA and the Ohio Wage Act, Defendants adopted and then adhered to their policy and plan of employing Plaintiff to perform pre-shift work without compensation. This policy resulted in Plaintiff and other similarly situated former and/or current employees not being paid for all time worked and for all of their overtime in violation of the FLSA and the Ohio Acts.

### B. Post-Shift Work

41. Plaintiff and other similarly situated former and/or current employees employed by Defendants were apportioned customer phone calls until the technical end time of their shifts. Plaintiff and other former and/or current similarly situated employees were not allowed to log out of Defendants' phone systems or Defendants' computer systems until the technical end time of their shifts.

42. After taking their last calls of their shifts, Plaintiff and other similarly situated former and/or current employees were required to clock out by calling in a code and then begin post-shift boot down procedures.

43. In order for Plaintiff and other former and/or current similarly situated employees to perform their jobs, going through the post-shift boot down procedures were integral and

9

indispensable to Defendants' business and integral and indispensable to the performance of CSRs' principal job duties.

44. At all times relevant to this Complaint, Defendants suffered or permitted Plaintiff and other former and/or current similarly situated employees to routinely perform off-the-clock post-shift work by requiring Plaintiff and other former and/or current similarly situated employees to call in the code to clock out before beginning any post-shift boot down procedures. This post-shift procedure would take approximately five (5) minutes per day. Defendants refused to recognize post-shift time as compensable.

45. Defendants knew or should have known that their employees are required to be paid for all compensable time throughout the workweek. Further, Defendants knew or should have known that their employees do, in fact, perform compensable post-shift work as 29 C.F.R. § 553.221 and C.F.R. § 790.8 provides.

46. Despite this, Defendants failed compensate its employees for their employees' post-shift compensable time.

47. Defendants knew or should have known that, under the FLSA, Plaintiff should have been paid overtime "at a rate not less than one and one-half times the regular rate" at which she was employed for all compensable pre-shift time for workweeks in excess of forty (40) hours. 29 U.S.C. § 207(a)(1).

48. In reckless disregard of the FLSA and the Ohio Wage Act, Defendants adopted and then adhered to their policy and plan of employing Plaintiff to perform pre-shift work without compensation. This policy resulted in Plaintiff and other similarly situated former and/or current employees not being paid for all time worked and for all of their overtime in violation of the FLSA and the Ohio Acts.

### C. Employee Records

49. The Ohio Acts mandate employers to "keep a true and accurate employment record . . . and of the hours worked by each employee and of the wages paid". See Ohio Rev. Code Ann. §§ 4111.08 and 4141.18.

50. 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

51. The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R § 516.2.

49. Upon information and belief, Defendants failed to maintain and preserve accurate timesheet and payroll records as required by 29 C.F.R § 516.2 and the Ohio Acts.

52. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

53. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to

complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

54. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA individually and on behalf of:

> All current and former Customer Service Representatives, or other job titles performing similar job duties, employed by Progressive Northern Insurance Company, Drive Insurance Holdings, Inc., The Progressive Corporation, and/or Does 1-10 at the Mayfield Village, Ohio call center location, at any time during the last three years, who were not paid overtime premiums for off-the-clock work during their preliminary 'boot up' time and postliminary 'boot down' completion' time.

55. Plaintiff does not bring this action on behalf of any employees exempt from coverage under the FLSA pursuant to the executive, administrative, or professional exemptions, or for those employees who were paid at the legal rate for each hour worked for off-the-clock work during their preliminary 'boot up' time and postliminary 'case list completion' time.

56. *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*: With respect to the claims set forth in the FLSA action, conditional certification under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendants' policy of not paying their employees for all compensable time worked, some of those compensable hours being at an overtime at a rate of one-and-one-half times their regular rate); (c) their claims are based upon the same factual and legal theories; and (d) the employment relationship between Defendants and every putative Class member is exactly the same and differs

12

only by name, location, and rate of pay.

57. Upon information and belief, there are numerous other similarly situated current and former Customer Service Representatives or other job titles performing similar job duties who performed uncompensated overtime hours in violation of FLSA and would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective Class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

58. Plaintiff shares the same interests as the putative conditional class and will be entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings the action pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4) on behalf of a putative Class defined to include:

> All current and former Customer Service Representatives, or other job titles performing similar job duties, employed by Progressive Northern Insurance Company, Drive Insurance Holdings, Inc., The Progressive Corporation, and/or Does 1-10 at the Mayfield Village, Ohio call center location, at any time during the last two years, who were not paid overtime premiums for off-the-clock work during their preliminary 'boot up' time and postliminary 'boot down' completion' time.

Plaintiff reserves the right to amend the putative class definition as necessary.

60. *Numerosity:* The members of the Ohio Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

61. *Commonality/Predominance:* There is a well-defined community of interest among Ohio Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether the preliminary time the Ohio Class members spend on boot up and log-in activities each shift is compensable under the Ohio Wage Act;

   b. Whether postliminary time the Ohio Class members spend on boot down and log-out activities after handing the last call of their shifts is compensable under the Ohio Wage Act;

   c. Whether Defendants violated the Ohio Acts through their pay practices;

   d. whether Defendants violated the Ohio Acts by failing make, keep, and preserve true and accurate payroll records;

   e. whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the Ohio Acts; and

   f. whether Defendants' violations of the Ohio Acts were willful.

62. *Typicality:* Plaintiff's claims are typical of those of the Ohio Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same Defendants' policies, practices, and course of conduct as all other Ohio Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Ohio Class members: whether all Class members were employed by Defendants on an hourly basis without receiving compensation for "off-the-clock" overtime wages owed for that work.

63. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Ohio Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of

nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the Ohio Class.

64. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible Ohio Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employers.

65. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendants have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

66. Plaintiff re-alleges and incorporates all previous paragraphs herein.

67. At all times relevant to this action, Defendant Progressive Northern, Defendant Drive Insurance, and Defendant Progressive Corp. were each an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

68. At all relevant times, Defendants were joint "employers" of Plaintiff within the meanings of 29 U.S.C. § 203(d) and were members of, and engaged in, a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership or common enterprise in employing Plaintiff and other similarly situated

15

current and/or former employees.

69. Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

70. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

71. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

72. The position of Customer Service Representative is not exempt from the FLSA.

73. Defendants' other job titles performing similar job duties are not exempt from the FLSA.

74. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

75. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

76. Defendants violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

77. Upon information and belief, Defendants have corporate policies and practices of evading overtime pay for its hourly workers for all compensable time worked.

78. Defendants' violations of the FLSA were knowing and willful.

79. By failing to compensate their hourly workers at a rate not less than one and one-half times their regular rate of pay for off-the-clock work performed in excess of forty hours in a

workweek, Defendants have violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated employees are victims of a uniform and company-wide policy which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to all employees who have worked or are working for Defendants in the same or similar position as Plaintiff.

80. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### (Class Action)
### VIOLATION OF THE OHIO ACTS

81. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

82. At all times relevant to the action, Defendant Progressive Northern, Defendant Drive Insurance, and Defendant Progressive Corp. were each an "employer" covered by the overtime mandates of the Ohio Acts, Plaintiff and the Ohio Class are "employees" entitled to the Ohio Acts' protections for the purposes of the Ohio Acts. *See* O.R.C. § 4111.03(D)(2)-(3).

83. The Ohio Acts entitle employees to certain hourly minimum wages, overtime wages, and other wages. *See* Ohio Wage Act §§ 4111, *et seq. See also*, Ohio Constitution, article II, section 34a.

84. The Ohio Wage Act entitles employees to bring a private action against an "employer who pays any employee less than wages to which the employee is entitled . . . [and] is liable to the employee affected for the full amount of the overtime wage rate . . . and for costs and reasonable

attorney's fees." Ohio Rev. Code Ann. § 4111.10(A).

85.     The Ohio Wage Act entitles employees to overtime compensation "at a wage rate of one and one-half times" of the employee's regular wage rate for those hours in excess of 40 hours per week." Ohio Rev. Code Ann. § 4111.03(A).

86.     Defendants violated the Ohio Wage Act by regularly and repeatedly failing to compensate employees to overtime compensation at a rate not less than one and on-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

87.     The Ohio Acts mandate employers to "keep a true and accurate employment record . . . and of the hours worked by each employee and of the wages paid". *See* Ohio Rev. Code Ann. §§ 4111.08 and 4141.18.

88.     Defendant violated the Ohio Acts by regularly and repeatedly failing to keep true and accurate employment records of each and every hour worked by its employees.

89.     The OPPA mandates employers "on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month." *See* Ohio Rev. Code Ann. § 4113.15(A).

90.     Defendants violated the OPPA because of its willful failure to compensate Plaintiff and the Ohio Class wages, described in this complaint as overtime wages at one and one-half times their regular hourly rate.

91.     As a result of Defendants' violations of the Ohio Acts, Plaintiff and the Ohio Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Ohio Class are entitled to recover unpaid wages owed, plus costs, attorneys' fees, and other

18

appropriate relief under the Ohio Acts at an amount to be proven at trial.

**WHEREFORE**, Plaintiff requests the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. Certifying the Ohio class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

c. Designating Named Plaintiff as the Class Representative;

d. Appointing Johnson Becker, PLLC as Interim Co-Lead Class Counsel with respect to Plaintiff's Rule 23 claims and FLSA claims;

e. Declaring that Defendants willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

f. Declaring that Defendants violated its obligations under the FLSA;

g. Declaring that Defendants willfully violated the Ohio Acts;

h. Granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) times Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of the prescribed number of hours per week for the past three years for the FLSA Class and two years for the State Class;

i. Awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and awarding Plaintiff and the class members all other available compensatory damages, including, *inter alia*, all unpaid wages, lost interest owed, and liquidated damages by Defendant under the Ohio Acts;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

k. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

l. Such further relief as this court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

| | |
|---|---|
| Dated April 21, 2017 | /s/ *Mark M. Abramowitz* |

Mark M. Abramowitz (0088145)
Mark A. DiCello (0063924)
**DICELLO LEVITT AND CASEY**
7556 Mentor Ave.
Mentor, Ohio 44060
Telephone: (440) 953-8888
Fax: (440) 953-9138
mabramowitz@dlcfirm.com
madicello@dlcfirm.com
*Local Counsel for Plaintiff*

Jacob R. Rusch
MN Bar No. 391892 *(Pro Hac Anticipated)*
Molly E. Nephew
MN Bar No. 397607 *(Pro Hac Anticipated)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
jrusch@johnsonbecker.com
mnephew@johnsonbecker.com

*Trial Attorneys for Plaintiff*